WILLIAM D. WILLSON *v.* OSCAR A. BURTON AND OTHERS.

[ IN CHANCERY. ]

*Mortgage.      Subrogation.      Contract.*

N. was the owner of a life estate in certain premises, remainder to his sons R. and H., subject to a mortgage to E. & R. R. mortgaged his moiety to B. H. became bankrupt, and N. purchased his moiety of his assignee, and mortgaged it to S., after which he conveyed all his interest in the premises to B. B., when he took the deed from N., agreed in writing to pay the mortgages to E. & R. and S. E. & R. brought a petition against B., S., and R. to foreclose, and obtained a decree, and B. redeemed. The mortgage to S. and the notes thereby secured became the property of W., who brought a petition against B., R., and N's administrator, N. having died, praying that his mortgage be established as a lien prior to the mortgage to E. & R., and for foreclosure. *Held*, that B., but for his agreement to pay E. & R's mortgage, might, by payment, have become subrogated to the rights of E. & R. thereunder, but.that, he having agreed to pay it, his payment operated to extinguish it; that, as he had also agreed to pay the mortgage to S., if the estate of N. were compelled to pay it, the administrator might recover therefor from B.; that such circuity of proceedings was not permissible in equity; and that, therefore, the petitioner should have a decree.

The written agreement of B. was alleged to have been delivered to R. and by R. to have been surrendered to B. *Held*, that as it was contemporaneous with the deed and relative to the subject-matter thereof, and as the consideration therefor moved from N., it must be held to have been given for N's benefit, and that therefore it was not competent for R. and B. to cancel it.

PETITION FOR FORECLOSURE. It appeared from the petition, answers, and evidence that on April 14, 1875, Nelson H. Armington, jointly with his wife Fanny, was the owner of a life estate in a house and lot in the village of St. Albans, of the value of

$3,000, or more, the remainder and inheritance in fee of which was vested in said Nelson's two sons, Henry J. and J. Russell Armington. The property was then subject to a mortgage for $1,267.50, owned by Edson & Rand. On that day Russell mortgaged his moiety of the inheritance to Oscar A. Burton to secure the payment of his promissory notes of January 1, 1872, for $11,500. On July 13, Henry having become insolvent and gone into bankruptcy, Nelson purchased of his assignee in bankruptcy his moiety of the inheritance. On July 17, Nelson, being the owner of a life estate in the premises and of an undivided half thereof in fee subject to mortgage as aforesaid, executed a mortgage of that undivided half to Albert Sowles, to secure the payment of his two promissory notes for $300 each. On October 13, 1876, Nelson conveyed by quit-claim deed all his interest in the premises to said Burton, and Burton went into possession. Edson & Rand afterwards brought a suit to foreclose their mortgage to which Burton, Sowles, and said Russell and wife were made parties defendant. A decree *pro confesso* passèd against them all, but Burton redeemed by paying $1,688, the amount of the decree, before the expiration of the time for redemption. The petitioner, having become the owner of the notes and mortgage to Sowles, brought this petition, to which Burton, said Russell and his wife, and the administrator of said Nelson's estate, said Nelson having died, were made parties defendant.

The petition alleged that on October 13, when said Nelson conveyed to Burton, Burton and said Russell, in consideration thereof, agreed with said Nelson to pay the debt to Sowles and the debt to Edson & Rand and save him harmless therefrom ; that a writing was then drawn expressing, among other things, the agreement to pay the debt to Sowles, and delivered to said Nelson or to Russell for his benefit ; that Burton paid the debt to Edson & Rand pursuant to that agreement ; that on or about August 29, 1877, after the death of said Nelson, Russell surrendered that writing to Burton, pursuant to a secret agreement between them to defraud said Nelson's heirs ; and that Burton, to the same end and to avoid said agreement, entered into an agreement in writing with Sowles, who then held the notes and mort-

gage in suit, whereby it was agreed that Sowles should present the notes for allowance by the commissioners on said Nelson's estate, and Burton should pay him whatever part thereof the commissioners would not allow. The petition prayed that the petitioner's mortgage be declared to be a " first and prior lien " on the mortgaged premises, prior to the lien of Burton under his mortgage, that the petitionees be ordered to pay the notes thereby secured with interest, and for general relief.

Burton and said Russell and wife answered, admitting the making of a written agreement with Sowles, but alleging that it was upon condition that Sowles should procure his notes to be allowed by the commissioners on the estate of said Nelson, and that Sowles procured them to be allowed, but, before the commissioners re-ported,' sold his claim to the petitioner, who, with the approval of Sowles, procured the commissioners to reverse their decision ; admitting the giving to said Russell a writing agreeing to pay to him whatever the premises might sell for in excess of the incumbrance to Edson & Rand, but denying that they or either of them agreed to pay the Edson & Rand and the Sowles mortgages, and to save said Nelson harmless therefrom, and denying that any writing expressing such arrangement was executed at the time of the conveyance from said Nelson to Burton, or that said Russell surrendered any such writing, as in the petition alleged ; admitting payment of the sum due on the mortgage to Edson & Rand, as alleged ; but alleging that payment was made to prevent a forfeiture, and insisting that the mortgage and mortgage notes thereby became the property of Burton, and that Burton became subrogated to the rights of Edson & Rand thereunder ; alleging that Burton paid said Nelson for the deed of October 13, the sum of $50 only, which was about the cost of foreclosure proceedings ; and insisting that the Edson & Rand mortgage should be declared to be a first lien on the mortgaged property. Hall made no answer.

There was evidence on the part of both parties relative to the alleged agreement by Burton, evidence tending to prove that he agreed to pay the incumbrances, and evidence tending to prove that he did not. There was also evidence tending to prove that on January 8, 1878, Russell gave up the original agreement and

received another from Burton, that Burton agreed with Sowles as alleged, that Sowles presented his claim before the commissioners on said Nelson's estate, that the administrator resisted it, on the ground that Burton had assumed on sufficient consideration to pay it, and that it was disallowed by the commissioners.

The cause was heard on petition, answer, and proofs, at the September Term, 1879, when the court, Royce, Chancellor, ordered that the petition be taken as confessed by Hall, and that the petitionees pay the sum due on the petitioner's notes, with interest, or be foreclosed of their right to one undivided half of the premises in question.

Appeal by the petitionee Burton.

*Edson, Rand & Cross* and *Wilson & Hall*, for the petitioner.

The alleged agreement is made out. That is decisive, and entitles the petitioner to a decree for one undivided half of the premises. Jones Mortgages, ss. 679, 680, 740 *et seq.; Welch* v. *Beers*, 8 Allen, 151 ; *Drury* v. *Tremont Improvement Co.* 13 Allen, 168 ; *Marsh* v. *Pike*, 1 Sandf. Ch. 210 ; *Townsend* v. *Ward*, 27 Conn. 610 ; *Converse* v. *Cook*, 8 Vt. 164 ; *Marsh* v. *Pike*, 10 Paige, 505 ; *Jumel* v. *Jumel*, 7 Paige, 591. If there was any doubt that Burton agreed to pay the petitioner's mortgage notes, it appears that he agreed to pay the Edson & Rand mortgage, and has paid it. The petitioner is entitled to the decree prayed for.

Burton now claims that he is absolved from his agreement with Sowles, because Sowles did not have his notes allowed against the estate. But if they had been allowed, it would not have benefited Burton, because if the estate had been compelled to pay, the administrator being subrogated to the rights of Sowles, might have brought a bill to foreclose.

The sale of the premises by Nelson to Burton, there being a stipulation that Burton should pay the incumbrance, made Burton the principal and Nelson the surety for the mortgage debts, both at law and in equity. Jones Mortgages, ss. 741, 751.

*H. S. Royce*, for the petitionee Burton.

The petitioner is not entitled to relief on the ground of the alleged agreement. The agreement is not proved.

In the absence of agreement to pay the mortgages, the petitioner is not entitled to the relief sought. The Edson & Rand mortgage was a common burden. Burton and Sowles were equally bound to redeem. Burton, by redeeming, became subrogated to the rights of the mortgagee, as against Sowles. *Gates* v. *Adams*, 24 Vt. 70 ; *Admrs. of Lyman* v. *Little*, 15 Vt. 576 ; *Lyman* v. *Lyman*, 32 Vt. 79 ; *Hubbard* v. *Ascutney Mill Dam Co.* 20 Vt. 402 ; *Downer* v. *Wilson*, 33 Vt. 1 ; *Walker* v. *King*, 44 Vt. 601. And that would be so, if Sowles had not been made a party in the foreclosure suit of Rand & Edson. *Walker* v. *King, supra ; Walker* v. *King*, 45 Vt. 525.

The agreement with Sowles was valid and binding.

The opinion of the court was delivered by

REDFIELD, J. N. H. Armington was the owner of a life estate jointly with his wife, in a house and lot in St. Albans village, subject to a mortgage owned by Edson & Rand. The remainder and inheritance was vested in the two sons of N. H. Armington, Russell and Henry. Russell mortgaged his moiety of the inheritance to the defendant Burton. Subsequently N. H. Armington purchased of Henry's assignee in bankruptcy Henry's moiety of the inheritance. Subsequently N. H. Armington (being the owner of one undivided half of the premises in fee, subject to the mortgage of Edson & Rand, which was a common burden upon the whole premises) mortgaged that undivided share to Albert Sowles, and the petitioner has become the owner of that mortgage. The defendant Burton purchased and took a quit-claim deed from N. H. Armington of his interest in the whole premises, and thereby became the owner of the equity of redemption of the whole premises and the reversionary interest of the said Henry. At the time the latter deed was delivered, Burton executed a written agreement promising to pay the incumbrances on said estate, or part of them. The exact tenor of the writing is left by the evidence in dispute. After the death of N. H. Armington, by an arrangement between Burton and Russell Armington, this written agreement was given up and cancelled, and a new agreement of different tenor substituted in its place. Soon after this Burton

gave Sowles, who then owned this mortgage, a written agreement that he would pay this mortgage, with the condition that Sowles should present the notes secured thereby to the commissioners on N. H. Armington's estate for allowance. Sowles did present said notes to said commissioners for allowance, which was resisted by the administrator of N. H. Armington's estate, on the ground that Burton had agreed with the intestate, upon sufficient consideration, expressly, to assume and pay those notes ; and the notes were disallowed by the commissioners.

The consideration for this quit-claim deed was $50, a mere nominal consideration ; the value of the estate, $3,000, or more. The nominal consideration paid shows that Burton paid its value, less the incumbrances, or less some other large sum. By the operation of said deed the right in equity of redeeming the Sowles mortgage was vested in Burton, and the life estate of N. H. Armington in the whole estate. Without any special agreement that Burton assumed the payment of the Edson & Rand mortgage, I think he would have the right in equity to keep said mortgage on foot, after he had been compelled to pay it to save his own securities, for the purpose of apportioning the burden equitably among the owners and interests in the premises.

This brings us to consider the agreement or understanding of the parties at the time of the delivery of the deed from N. H. Armington to Burton. It is admitted that there was a written contract, and as the consideration moved from N. H. Armington, it must be held, as it was contemporaneous and touching the subject-matter of the deed, to have been executed for his benefit, though it may have been delivered to Russell. And it would not be competent for Burton and Russell to cancel such contract and substitute another in its place, without the consent of the party for whose benefit it was made, or to the prejudice of the subsisting rights of others. By the new and substituted contract of January 8, 1878, Burton agrees with Russell to give Russell one half the avails of the premises over and above the Edson & Rand mortgage ; and it is evident from this contract, and all the evidence that Burton, at least, did assume the Edson & Rand mortgage. If so, it was extinct when paid ; and he had no right or ca-

pacity to waive it and keep it on foot for any purpose. But we are satisfied from the evidence that Burton expressly agreed in writing, upon a new and sufficient consideration, to pay both mortgages. If, therefore, the estate of N. H. Armington should be compelled to pay the Sowles notes, it could in equity compel Burton to reimburse the money paid, or surrender the land ; but in equity no such circuity of proceedings is allowed.

*Judgment affirmed, and cause remanded.*