# SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, MAY TERM, 1885, IN THE SIXTY-NINTH YEAR OF THE STATE.

———◆———

### No. 11,790.

### BIRKE ET AL. *v.* ABBOTT ET AL.

JUDGMENTS.—*Real Estate.—Conveyance.—Agreement to Pay Liens.—Mortgage.—Sheriff's Sale.— Merger.— Subrogation.— Equity.—Contract.— Negligence.*—The owner of real estate, against which existed judgment liens, sold it to B., who assumed the payment of such judgments as a part of the purchase-price. Without paying such liens, B. quitclaimed the land to C., who did not assume them. C. mortgaged the land to X., and after the mortgage was recorded he conveyed it by warranty deed to W., who had no actual knowledge of the X. mortgage, and who assumed the payment of the judgments. Subsequently, W. discovered the mortgage, and instead of paying the judgments he allowed the land to go to sale on them and obtained sheriff's deeds.

*Held*, that by the assumption W. became the principal debtor and primarily liable to pay the judgments.

*Held*, also, that W. could not acquire title as against X. through the sales made on the judgments, nor will they be kept alive for the purpose of protecting the title which he acquired from his grantor.

*Held*, also, that a court of equity will not relieve W. from an injudicious contract, negligently made and fully executed with knowledge of all the facts.

103    1
130    373
103    1
141    50
103    1
147    407

SAME.— *Agreement of Grantee to Pay Encumbrances.*—The liability of a grantee, who assumes prior encumbrances, depends upon his contract, and not upon the liability of his grantor.

SAME.—*Subrogation.*—A purchaser can not be subrogated to the benefit of an encumbrance which he has agreed to pay. *Peet* v. *Beers,* 4 Ind. 46, and *Ayers* v. *Adams,* 82 Ind. 109, are distinguished.

ELLIOTT, J., dissents.

From the Marion Superior Court.

*F. Rand* and *J. M. Winters,* for appellants.

*F. J. Van Vorhis* and *W. W. Spencer,* for appellees.

MITCHELL, C. J.—This was an action brought by the appellants to quiet their title to a certain fifty-five acre tract of land in Marion county.

There were answers and a cross complaint filed by Abbott, and upon issues joined on the complaint and cross complaint, the cause was submitted to the court for trial. A special finding of facts was made, upon which the court stated its conclusions of law adversely to the appellants.

All the facts necessary to develop the questions for decision are the following: In 1870, one Church owned the land in controversy, and, while owning it, two judgments were recovered against him in favor of the estate of Colley, one being a foreclosure against the land for something over $1,-000, the other a personal judgment for about $600. Church sold and conveyed the land to Ferree, July 20th, 1870, the purchaser assuming in his deed the existing encumbrances above mentioned, as part of the purchase-price. On January 7th, 1873, Ferree sold and conveyed to Julius A. Kelly, who made a like assumption of the liens. Julius A. Kelly, on March 21st, 1873, having paid nothing on the encumbrances, quitclaimed the land to Lewis L. Kelly, in whose deed no assumption of the encumbrances appears, and who did not assume them in fact. On the same day on which the land was conveyed to Lewis L. Kelly, he executed a warranty mortgage on it to David B. Abbott, to secure a note of $1,000 of even date therewith, payable in three months,

with ten per cent. interest.  This mortgage was duly placed of record on the 24th day of June, 1873.  On the 30th day of July, 1873, Kelly sold and conveyed the land to Witt by deed containing covenants of warranty, the purchaser assuming in his deed, as part of the purchase-price, the payment of the above mentioned encumbrances to the Colley estate. Of the Abbott mortgage, Witt had, at the time he purchased and took his deed, no actual knowledge.  At the time of the conveyance to Witt, the land had been sold on one of the Colley judgments, and a certificate of purchase was held by the purchaser.  The amount for which it sold was expressly stipulated in the deed, and this sum with costs, together with the judgment on which no sale had been made, Witt stipulated to pay as part of the purchase-price.  After the conveyance and assumption above mentioned, Witt discovered the Abbott mortgage, and instead of paying off the Colley encumbrances, he purchased and took an assignment of the certificate of sale on the one and permitted the land to go to sale on the other.  Subsequently, he obtained sheriff's deeds on both.  It was found that he took this course in order to protect his title.  Kelly was and still is insolvent.  The land was found to be worth about $2,500.  The Colley claims, with interest, amount to about the full value of the land, and the Abbott mortgage and interest amount to $2,218.  The appellants have by certain mesne conveyances succeeded to the rights of Witt, and are in possession.

The questions for consideration are:  Witt having assumed the payment of the Colley judgments, could he acquire title as against Abbott by the subsequent sales made on those judgments, and, if he could not, will the judgments be kept alive for the purpose of protecting the title which he acquired from Kelly ?

The appellants' counsel press the argument with much force:  1. That the sheriff's deeds to Witt, which were made in pursuance of the sales on the judgments mentioned, are effectual to cut out the Abbott mortgage, notwithstanding

the assumption contained in Witt's deed.    2. That, if this is
not so, then Witt and those in privity with him are subro-
gated to the rights of the Colley estate, and the liens are on
foot for their protection against the Abbott mortgage.

The propositions above stated involve substantially the
same principles.  If, under the circumstances, Witt, upon
making payment, was not and could not be subrogated to the
rights of the holder of the encumbrances, which he assumed
to pay, then whether he paid them in pursuance of sheriff's
sales or otherwise, they were extinguished, and no right can
be predicated upon them, either as respects the title obtained
under them or liens antedating the Abbott mortgage.

If, after obtaining the title from Kelly upon the agreement
and consideration that he would pay off the Colley judgments,
Witt could, upon discovering the Abbott mortgage, instead
of paying the prior encumbrances, according to his agree-
ment, purchase the certificate of sale on the one, and per-
mit the land to go to sale on the other, and by that means
acquire a title antedating the subsequent mortgage, it must
be because he stood in such relation to the judgments and
mortgage as that the doctrine of equitable subrogation would
obtain for his benefit.

Ordinarily, any person may acquire title to land through
the medium of a sheriff's sale, but there may be cases in
which the purchaser, from his relation to the land sold, or to
the judgment upon which the sale is made, is precluded from
acquiring title under such judgment or sale.

Where the complete legal title is already in the purchaser,
another title obtained through a judicial sale would merge
in the prior title, if it appears that the title formerly held and
that acquired by the sale are held in the same right, with no
intervening title in a third person.  If, however, the title so
obtained was procured for the purpose of cutting off inter-
vening titles or encumbrances, and to re-enforce a title then
held, the subsequently acquired title will merge or be kept on

foot, depending on the relation in which the purchaser stood to the judgment or sale on which the title is predicated.

If the purchaser was primarily liable to pay the encumbrance on account of which the sale was made, it would seem reasonably manifest that he could build up no additional title on his own default.

Where a legal title to the whole estate is claimed by one in possession, all subsequently acquired titles, co-extensive with or derived from the same source of that held, are presumptively merged. Equity will keep such subsequently acquired title alive, as against intervening encumbrances, only in case the purchaser owed no personal duty, or was under no binding obligation which required him to prevent such title from accruing.

Where, however, the purchaser of real estate, as part of the consideration for the purchase, by express contract stipulates that he will pay encumbrances on the land, he thereby comes under a personal obligation to pay such encumbrances. Thenceforth, as to all persons who were liable before him, he is the principal debtor, and they stand in the relation of sureties to him, and he could not, thereafter, defeat encumbrances which intervened between his title and other liens, which, upon a sufficient consideration, he had become personally bound to pay. *Winans* v. *Wilkie*, 41 Mich. 264; *Heim* v. *Vogel*, 69 Mo. 529; Pomeroy Eq. Jur., section 797.

That the assumption of the Colley judgments, contained in the deed from Kelly to Witt, made the latter personally and primarily liable, is the established rule of decision in this State, and this contract enured to the benefit of the creditor as well as those previously liable for the debt. *Snyder* v. *Robinson*, 35 Ind. 311 (9 Am. R. 738); *Hill* v. *Minor*, 79 Ind. 48; *Josselyn* v. *Edwards*, 57 Ind. 212; *Rodenbarger* v. *Bramblett*, 78 Ind. 213; *Hoffman* v. *Risk*, 58 Ind. 113; *Davis* v. *Hardy*, 76 Ind. 272; *Ritter* v. *Cost*, 99 Ind. 80, and cases cited. And this is the rule generally prevailing. Sheldon Subr., section 85; Pomeroy Eq. Jur., section 1207.

Birke *et al. v.* Abbott *et al.*

Some discussion may be found upon the question whether the mere fact that one has or claims title to and is in possession of land, should preclude him from making a purchase at a tax or other sale, in extinguishment of the title or claim of another with whom he stands in no contract or fiduciary relation; but, whatever may be said on that subject, it seems clear upon authority and well founded in equity, that where a purchaser of land upon which there are encumbrances, of all of which he has constructive notice, deliberately by contract assumes such relation to some of them, as that he becomes with reference to them the principal debtor, he can not, by the violation of his contract, predicate a title on the encumbrances which, upon a sufficient consideration, he contracted to discharge.

It is argued that because Kelly, the grantor of Witt, was not personally liable for the encumbrances which his grantee assumed, the assumption of the latter did not bind him personally, and that in consequence the rule above stated does not apply. In support of this proposition counsel rely upon *Trotter* v. *Hughes,* 12 N. Y. 74, *King* v. *Whitely,* 10 Paige, 465, *Pardee* v. *Treat,* 82 N. Y. 385, and *Vrooman* v. *Turner,* 69 N. Y. 280 (25 Am. R. 195). The holding in some of the cases cited is, in substance, that where the grantor in a deed is not personally liable for a debt, the payment of which the grantee assumes in the deed, such assumption amounts to nothing more than taking the title subject to the encumbrance, and is a personal contract between the grantor and grantee and does not enure to the benefit of the creditor whose debt is assumed.

It is said that as the grantor had no concern with, and was not liable for, the debts assumed, and had no interest in making provision for their payment, the court would not intend that it was the purpose of the parties to the contract that it should enure to the benefit of the creditors, and, therefore, the grantee did not become personally liable to them. This was the theory of *King* v. *Whitely, supra,* and *Trotter* v.

*Hughes, supra.* In the later case of *Thorp* v. *Keokuk Coal Co.,* 48 N. Y. 253, the doctrine of these cases was considered and repudiated. In the still later case of *Vrooman* v. *Turner, supra,* some recognition was given the earlier cases; but in the case of *Pardee* v. *Treat, supra,* upon a consideration of all the previous cases, the rule was stated, in substance, that if the purchaser's contract of assumption was of such special character that the grantor remained primarily, and the grantee secondarily liable, then it did not enure to the benefit of the creditor.

The doctrine of *King* v. *Whitely* and *Trotter* v. *Hughes, supra,* has not been generally accepted, even in New York; the prevailing doctrine elsewhere, as stated in section 1207, Pomeroy Eq. Jur., where these cases are referred to, is, that the liability of a grantee who assumes prior encumbrances depends upon his contract, and not upon the liability of his grantor. The application of the rule contended for could make no difference in this case. Kelly, having executed a warranty mortgage to Abbott, had a direct interest in providing for the payment of the prior encumbrances. Although not personally liable, the land was chargeable in his hands with their payment. *Spray* v. *Rodman,* 43 Ind. 225; *Atherton* v. *Toney,* 43 Ind. 211.

It may be assumed that it was Kelly's purpose, in leaving in Witt's hands a sufficient sum out of the purchase-price to discharge the prior encumbrances, to secure their extinguishment for the benefit of his covenants in the Abbott mortgage. Abbott, by virtue of his warranty mortgage, had such an interest in, and benefit from, the contract of assumption by Witt, as that the money thereby reserved in his hands for the purpose of removing the prior encumbrances could not have been appropriated in any other direction while the contract of assumption remained in force. *Baring* v. *Moore,* 4 Paige, 166.

For the reasons already stated, by the payment of the encumbrances assumed, Witt was not in a situation to be sub-

rogated to the rights of the Colley estate.    Having assumed
the payment of these encumbrances, he had no equity to have
them kept on foot.    1 Jones Mort., section 743.

Subrogation takes place only where one has performed the
obligation of another, or has paid his own debt, the burden
of which has, for a valuable consideration, been assumed by
another, or when he has paid encumbrances for the protection
of his own title or interests, the payment of which he has
not assumed by contract.    The debtor upon whom rests the
ultimate obligation of discharging the debt can not by his
payment acquire any right of subrogation.    A purchaser can
not be subrogated to the benefit of an encumbrance which he
has agreed to pay.    Sheldon Subrogation, section 46.

Upon this subject a learned author has said : " If payment
of the mortgage debt is made to the mortgagee or other
holder of the mortgage, by a party who is himself personally
and primarily liable for the debt, who is in any manner and
by any means the actual primary debtor, whose duty it is to
pay the debt absolutely and before all others, such payment
operates *ipso facto* as an end of the mortgage, and the lien
is completely destroyed.    The party so paying is not subro-
gated to the rights of the mortgagee ; there is no equitable
assignment to him of the mortgage security ; even if he
should receive a formal assignment, the mortgage could not
be thus kept alive, but would be wholly merged and ended."
Pomeroy Eq. Jur., section 1213.

The same author, in a note to section 1206, lays down the
rule in the following language : " Since such grantee thus be-
comes the principal debtor, primarily and absolutely liable for
the debt, when he pays the mortgage it is completely extin-
guished. * * * He can not by any form of assignment, legal
or equitable, or by subrogation, keep the mortgage alive as
against other liens on the land."  See, also, Pomeroy Eq. Jur.,
section 797.

The same rule was applied in *Carlton* v. *Jackson*, 121 Mass.
592.    It was there held that when an encumbrance is paid

by one whose duty it was, by contract or otherwise, to pay it, such payment effected a release or discharge of the debt, and it could not thereafter be kept alive for any purpose. To the same effect are *Willson* v. *Burton,* 52 Vt. 394, *Heim* v. *Vogel,* 69 Mo. 529, and 1 Jones Mort., section 743.

By the contract of assumption the judgments in favor of the Colley estate became binding on Witt precisely as if they had been originally taken against him, and, as was said by HOWK, J., in *Ritter* v. *Cost,* 99 Ind. 80, when he paid them off, he merely paid his own personal debt, for which, under his contract, he became personally liable. And, as was said by ELLIOTT, J., in *Klippel* v. *Shields,* 90 Ind. 81, " Payment by one primarily liable as a judgment debtor extinguishes the judgment." Or, as was tersely said by THOMPSON, C. J., in *Abbott* v. *Kasson,* 72 Pa. St. 183, " It would be a novelty for a purchaser of land to keep on foot his own mortgage against his own estate."

It is said that the conclusion above stated will operate harshly against Witt and his grantees; that because he made the assumption contained in his deed without actual notice of the Abbott mortgage, the application of the principles announced will result in injury to him, while to keep the judgments alive will leave Abbott in no worse position than he was before; that Witt had no actual notice of the Abbott mortgage could only have resulted from his neglect to attend to what the record disclosed. Against negligence a court of equity can afford no relief. Besides, the record shows that before he paid his money on the Colley judgments he had discovered the Abbott mortgage, when, instead of taking steps to rescind the contract, he undertook to re-enforce his title by acquiring titles under the judgment which he contracted to pay. If he was entitled to any equitable relief at all, that relief could have been afforded when he discovered the mortgage in ignorance of which he avers the contract of assumption was made, but having executed the contract by paying the judgments, or doing that which was in legal effect the

same as paying them, with knowledge of the mortgage, a court of equity can not now relieve him from an injudicious contract negligently made and fully executed with knowledge of the facts. Besides, Abbott was in no fault. He put his mortgage of record for the information of all who should thereafter deal with the land, and in law the record was effectual for that purpose; that he is placed in a more advantageous situation by reason of the contract of assumption between Kelly and Witt is not to be denied. But his mortgage being of record, we must assume that the parties to the contract of assumption made it with knowledge of the fact and of the benefit which would accrue to him, and we have no power now arbitrarily to say he shall not have it. The cases of *Peet* v. *Beers,* 4 Ind. 46, and *Ayers* v. *Adams,* 82 Ind. 109, are relied on as sustaining the view that a mortgage may be kept on foot by a purchaser who has assumed its payment. The decision in *Peet* v. *Beers, supra,* is apparently put on the ground that the purchaser, notwithstanding his assumption, stood in the situation of a surety to the mortgage assumed. Upon no other basis could the conclusion have been reached, that subrogation took place upon payment. Whatever may have been the rule at and before *Peet* v. *Beers, supra,* was decided, this court, as nearly all others, is now so thoroughly committed to the doctrine that the purchaser who assumes an encumbrance is the principal debtor, and the vendor or other person who was primarily liable is the surety, that it can not now recede from it. Of *Ayers* v. *Adams, supra,* it may be said, that the question does not seem to have been either presented or considered. It seems to have been conceded on all hands, that if what was received by the creditor constituted payment of the debt assumed, the purchaser was entitled to be subrogated.

The question is now distinctly presented, and we must accept the alternative of deciding whether or not a purchaser, who by his assumption makes a debt his own, can, after paying it off, keep it on foot, or whether he will be treated as

having paid and discharged his own debt. We feel constrained to adopt the latter view.

We think the cases of *Peet* v. *Beers, supra,* and *Ayers* v. *Adams, supra,* are to be distinguished from the one before us, and that neither is, for the reasons above suggested, authority against the conclusion reached.

The judgment is affirmed, with costs.

Filed June 9, 1885; petition for a rehearing overruled Nov. 6, 1885.

## DISSENTING OPINION.

ELLIOTT, J.—I concur in the conclusion that Birke could not acquire title under the sheriff's sale on the Colley judgments, but dissent from the conclusion that he could not hold and enforce them as liens against the Abbott mortgage.

I think that as the promise to pay the Colley judgments was solely in consideration that the promisor should acquire a clear title to the land purchased, and that as the consideration failed the promise should not be enforced in favor of the mortgagee Abbott. This conclusion does Abbott no injury, because it leaves him in the same condition he was at the time he took his mortgage, while the conclusion reached by the court puts him in a better condition at the expense of Birke, and this I respectfully affirm is not equitable. The rule adopted by the court enables a stranger to make a promise available which the party to whom it was made could not have enforced. But for the promise it is clear, under all the authorities, that the purchaser could have used the Colley judgments for the protection of his title against the Abbott mortgage, and that promise ought not to deprive him of this right, for the reason that he did not get the consideration on which it was made, namely, a good title. Time permits only a bare statement of the main proposition which constrains this dissent, although there are others that may be suggested.

Filed June 9, 1885.