JOSEPH GERARDI et al., Appellants, v. HARVEY L. CHRISTIE, Trustee et al., Respondents.

St. Louis Court of Appeals, April 19, 1910.

1. APPELLATE PRACTICE: Finding by Chancellor. In an equity case, the appellate court will defer to the finding of the court below, where it is in doubt as to which of two theories is the correct one under the evidence.

2. DEEDS: Time of Delivery: Presumption. A deed is presumed to have been delivered on the day it was acknowledged, though dated before.

3. MORTGAGES: Assumption of Incumbrance by Purchaser of Mortgaged Property. A purchaser of land subject to a deed of trust, who agreed to pay a note secured thereby, became pri-

marily responsible for the debt, instead of the maker, and any holder of the note could sue him thereon, and, the stipulation being for his vendor's benefit, the latter would be entitled to redress against him, if damaged by his failure to pay.

4. ————: **Payment or Purchase of Mortgage: Evidence: Inferences.** Where a note and a deed of trust securing it were transferred, a check given by the transferee reciting it was in payment "for" and not "of" the note and deed of trust favors the insistence of the transferee that the transaction was a purchase and not a payment.

5. ————: **Acquisition of Mortgage Debt by Owner of Fee: Merger.** When the owner of the fee acquires an incumbrance for which he is primarily responsible, it is merged in the fee.

6. ————: ————: ————: **Equity Follows Rule at Law.** Equity follows the rule of the common law as to merger, where the owner of a fee acquires an incumbrance for which he is primarily responsible, and the rule properly applies to a grantee who assumes an incumbrance created by his grantor, and subsequently buys it in.

7. ————: ————: ————: **Outstanding Title in Trustee.** An outstanding title in a trustee will prevent a merger of a deed of trust in the fee when the holder of the latter buys the secured debt, for he acquires no interest as regards the land, except to have it sold by the trustee in the event of a default—that is, he does not acquire an estate which will merge in the larger estate he holds already, but only a right.

8. **TRUSTS: Incumbrance on Trust Property: Rights and Liabilities of Trustee.** Though one who held title to a lot in trust for himself and associates and a corporation which they meant to form, and who was not bound to pay for it out of his own funds, but with money furnished by his associates or to be raised on bonds of the corporation secured by a deed of trust on the lot, was bound, as against other parties in interest, by his contract with his vendor to discharge a note secured by a trust deed of the lot, he was not bound to do so as against his associates or a subsequent purchaser at a sale of the lot under another trust deed; but while he stood in a fiduciary capacity to his associates or to the corporation, he could not lawfully hold the note which he acquired and dispose of it to the prejudice of the corporation, or so as to deprive it of the right to pay it and discharge the lien.

9. ————: ————: ————. One holding title to a lot in trust for himself and others had an interest therein which warranted him to acquire a note secured by a trust deed on the lot, if

necessary to prevent a sale under the deed, and, if he purchased the note, he was not a mere volunteer in the transaction.

10. **MORTGAGES: Assignment: Defenses Against Purchaser: Bills and Notes.** Where one holding title to a lot in trust for himself and associates and a corporation which they meant to form bought a note secured by a trust deed on the lot, defenses in favor of his associates or the corporation as against him, on the score that he acquired the note contrary to the trust, and other defenses growing out of their relation with him, except that of payment with their money, were collateral, unconnected with the note, and not available against one who purchased the note from him in good faith after maturity.

11: ———: ———: ———: **Merger.** A note secured by a trust deed on a lot was not paid by its purchase by one holding title to the lot in trust, if he bought it with his own money without intending to pay it, and hence he could sell it as the one from whom he bought could have done.

12. ———: ———: ———. Where the owner of the fee acquires title to an outstanding mortgage for which he is not individually responsible, no merger of the mortgage in the fee will be permitted, if he intended there should be no merger when he acquired it but, instead, that it should be kept alive for his benefit.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

Affirmed.

*R. M. Nichols* for appellants.

(1) Gardner's contract under date of September 28, 1906, to pay as a part of the purchase money, the deed of trust dated September 29, 1905, executed by L. I. Finegan, for the sum of $2500, as shown by the contract of purchase, and his confirmation of that contract and further contract under date of October 8, 1906, as contained in the deed of the Euking Realty Co., to him, made the debt his own; and his attempted purchase, or assignment of that note, would under such contractual relation *ipso facto*, amount to a satisfaction and cancellation of the debt. 1 Jones on Mortgages (4 Ed.).

sec. 864; Nelson v. Brown, 140 Mo. 581; Allen v. McDermott, 80 Mo. 56; Heim v. Vogel, 69 Mo. 529; Kellogg v. Schnaake, 56 Mo. 136; Wonderly v. Giesler, 118 Mo. App. 709; Pomeroy's Eq. Jur., secs. 797, 1206, 1213; Birke v. Abbott, 103 Ind. 7; Drury v. Holden, 121 Ill. 137; Hartshorne v. Hartshorne, 2 N. J. E. 349; McCable v. Swap, 96 Mass. 188; Carleton v. Jackson, 121 Mass. 592; Kneeland v. Moore, 138 Mass. 198; Winans v. Wilkie, 41 Mich. 264; Biles v. Kellogg, 67 Mich. 318; Ely v. McKnight, 30 How. Pr. 97; Mickles v. Townsend, 18 N. Y. 575; Natl. Investment Co. v. Norden, 50 Minn. 336; Johnson v. Walton, 60 Iowa 315; Fouck v. Delk, 83 Iowa 297; Bank v. Stone, 97 Iowa 183; Lewis v. Starkey, 10 Sm. & M. (Miss.) 120; Fretwell v. Branyon, 67 S. C. 95; Wilson v. Burton, 52 Vt. 394; Bier v. Smith, 25 W. Va. 830. (2) According to the court's finding Gardner, when he purchased the note, was acting in his individual interest. The rule is well settled that when an agent is acting for himself and not his principal, the rule does not apply that the principal is bound by the acts of the agent, and therefore the reasoning of the court that the Gerardis would be bound by the act of Gardner in selling the deed of trust to Mitchell would not apply. Bank v. Keyser, 127 Mo. App. 63; Hinkle v. Lovett, 114 Mo. 519; Smith v. Boyd, 162 Mo. 146. (3) Gardner, being the agent of the Gerardis, could not by a contract with Carter to keep the note alive, place himself in a hostile attitude to his principal, and this whether the fund he used to pay or purchase the note was his own fund, or the fund of the Gerardis. Story on Agency (8 Ed.), secs. 210, 211; Grumbley v. Webb, 44 Mo. 444; Harrison v. Craven, 188 Mo. 590; Montgomery v. Hundley, 205 Mo. 138. (4) The notation on the check "in payment of the deed of trust" does not mean purchase, but means payment, and is at variance with both Carter and Gardner's testimony as to intent when the note and deed of trust were delivered by Carter to Gardner. Clay v. Lakenan, 101 Mo. App. 568; White

v. Black, 115 Mo. App. 28; Hopson v. Axle & Spring Co., 50 Conn. 597; Bradford v. Richard, 46 La. Ann. 1530. (5) The contract by which Gardner assumed and agreed to pay the note, contained in the deed placed of record, was notice to Mitchell. Smith v. Boyd, 162 Mo. 146; Hudson v. Cahoon, 193 Mo. 547; Magie v. Reynolds, 51 N. J. E. 113, 26 Atl. 150; Hoppe v. Szezeponski, 209 Ill. 88. (6) It was not shown that Gerardi knew that Gardner on October 23, 1906, had paid off the mortgage when he brought the attachment suit November 9, 1906, for the full amount, or that Gerardi had received anything by his attachment, or that Mitchell acted upon Gerardi's claim for the full amount, or that he was misled by Gerardi's claim as stated in the petition, or that he was a party to such suit, either of which would be necessary in order to estop Gerardi from taking the present position that the mortgage was *ipso facto* satisfied by the payment by Gardner, or that the payment by Gardner was out of funds belonging to Gerardi which he had received for that purpose. 16 Cyc., p. 796. (7) The $18,702.79 was confessedly trust funds in the hands of H. B. Gardner. If the $18,000 (less the $500) was not trust funds in the hands of Gardner for the benefit of the Gerardis, Gardner mixed the same in his bank account with the Gerardis' trust fund in his name, thereby making the entire account a trust fund. The payment of the note out of the fund on October 23, 1906, should be held to be a payment out of the trust fund. Snodgrass v. Moore, 30 Mo. App. 232; Bank v. Life Ins. Co., 104 U. S. 54; 28 Ency. Law, p. 915, tit. "Confusion of Property." (8) The covenants of warranty in the deed of trust from Gardner to the Euking Realty Company for the purchase money under date of October 8, 1906, under which the plaintiff, Rookery Realty, L., I. & R. Company claims title, and which are implied from the words grant, bargain, sell, convey and confirm, would estop Gardner from purchasing the Finegan mortgage and selling it, because such act would be in

derogation of his warranty. Bohlcke v. Buchanan, 94 Mo. App. 320; Mickels v. Townsend, 18 N. Y. 575; Butler v. Stewart, 96 Mass. 466; Murphy v. Simpson, 42 Mo. App. 654. (9) The plaintiffs are not estopped from showing the invalidity and satisfaction of the deed of trust under the facts in this case. Brooks v. Owens, 112 Mo. 551; Lewis v. L. & B. Assn., 183 Mo. 351.

*Bryan & Christie* for respondents.

(1) The Rookery Realty, Loan, Investment and Building Company acquired the property in question by a deed which expressly recited that it was subject to the second mortgage which was held by respondent Mitchell, and it cannot now dispute the fact of that second mortgage, or its validity. 1 Jones on Mortgages (5 Ed.), sec. 744; Water Works v. Loan and Trust Co., 30 C. C. A. 133; Guernsey v. Kendall, 35 Vt. 201; Landau v. Cottrill, 159 Mo. 308; Young v. Com. Co., 158 Mo. 395; Davis v. Tandy, 107 Mo. App. 437; Parkey v. Veatch, 164 Mo. 375. (2) The money which was used by Gardner in purchasing the note from Carter was Gardner's own money, and was not the money of Joseph Gerardi, Jr., and the note was the property of Gardner Bros. & Co., when it was by them sold to defendant Mitchell. Finding of Judge Muench, appellant's record, pp. 324, 325 and 328. (3) Even if Joseph Gerardi, Jr., had been the owner of the note, still, if he so acted as to place it under the control of Gardner, and enabled Gardner to deal with it as if he, Gardner, were the true owner, and since defendant Mitchell is an innocent purchaser of said note for value, no equity could possibly attach to the note in favor of Gerardi, Jr., as against Mitchell; and this is true even though Mitchell did purchase the note after its maturity. Lee v. Turner, 89 Mo. 489; Gardner v. Trust Co., 76 N. E. 455, 2 L. R. A. (N. S.) 767. (4) Not only has there been no payment of the note in fact, but,

there has been no merger. (a) This is a suit in equity, and in equity estates are kept distinct when the interest of either party requires it. Mergers are not favored, and never take place contrary to the intention of the parties or the requirements of justice. Chrisman v. Linderman, 202 Mo. 605; Jones on Mortgages (5 Ed.), sec. 848; 20 Am. and Eng. Ency. Law, 590. (b) The record title to the equity of redemption held by Gardner, he held as trustee for the Monarch Realty & Building Company. The right which he acquired to the note, he acquired in his own right, and no merger can take place, even at law, unless the right previously held and the right subsequently acquired coalesce in the same person and in the same right. Jones on Mortgages (5 Ed.), sec. 848; Curry v. Lafon, 133 Mo. App. 163. (c) Between the record title to the equity of redemption in Gardner and the right which he acquired to the note by purchase, there intervened the right of the Monarch Realty & Building Company, which was at that time the real beneficial owner of the property in question. There also intervened the legal title of Harvey L. Christie, the trustee in the deed of trust securing that note. Because there was an intervening title between the right held by Gardner prior to the time when he purchased the note, and the right which he acquired by the purchase of the note, there could be no merger. Jones on Mortgages (5 Ed.), sec. 848; Curry v. Lafon, 133 Mo. App. 163; Kellogg v. Ames, 41 N. Y. 259; Rouse v. Johnson, 66 Mo. App. 57; Hospes v. Almstedt, 13 Mo. App. 270. (d) Nor does it make any difference in this case that in the deed by which the Euking Realty Company conveyed the property in question to Gardner, it was recited that the purchaser assumed to pay the deed of trust here in question. Such agreement was in no sense made for the benefit of the Rookery Realty, Loan, Investment and Building Company, who succeeded Gardner in the title and who acquired the property

148 App—6

subject to the second deed of trust. Kelly v. Staed, 136 Mo. 430; Sater v. Hunt, 66 Mo. App. 527; Kellogg v. Ames, 41 N. Y. 259; Wallach v. Schulze, 22 App. Div. (N. Y.) 57; Jones on Mortgages (5 Ed.), sec. 853; Powell v. Smith, 30 Mich. 451; Goodwin v. Kene, 47 Conn. 486; Pingree on Mortgages, sec. 1066.

GOODE, J.—This action is in the nature of a suit in chancery and was filed to have defendant Christie enjoined from selling a parcel of ground situate in city block No. 3881 in the city of St. Louis, fronting 225 feet on the east line of Kingshighway and extending eastwardly 150 feet along the north line of Maryland avenue; the depth eastwardly being 180 feet on the north boundary of the lot. The threatened sale was pursuant to a power conferred on Christie as trustee and party of the second part in a deed of trust executed by Louis I. Finegan, September 29, 1905, to secure Thomas P. Plumridge of the third part as payee of a note for $2500. When the present action was commenced, defendant Leonidas S. Mitchell was the holder and owner of said note, claiming to have acquired it by purchase from Gardner Bros. & Co., a firm composed of Harry B. Gardner and James P. Gardner, to whom it had been transferred by John S. Carter, assignee of the payee, Plumridge. Mitchell paid Gardner Bros. & Co., $2300 for the note on November 12, 1906, and after it had fallen due on September 29, 1906, it having been given to run one year. When this action commenced the Rookery Realty, Loan, Investment and Building Company was the owner of the property on which the note was secured, and plaintiff, Joseph Gerardi, Jr., was a stockholder in said company, a contributor to the money paid for the lot, and according to the testimony for plaintiffs, to the fund used to take up the note in suit. The questions on which depended the right of plaintiffs to the relief they asked were, whether the

note secured by the deed of trust had been paid prior
to its acquisition by Mitchell, and if it had been paid,
whether Mitchell was an innocent purchaser for value
and entitled, as against these plaintiffs to enforce the
collection of it by sale under the deed of trust.   Prior
to 1906 Joseph Gerardi, Sr., his wife Annie Gerardi and
their son Joseph Gerardi, Jr., had been engaged in the
hotel business in the city of St. Louis.   Their business
was transacted partly in the name of the son and partly
in the name of a corporation known as the Jos. Gerardi
Hotel Company.   They desired to conduct a larger es-
tablishment than the one or more they had been con-
ducting, and this wish led them into transactions with
Harry B. Gardner, who was a real estate broker in the
city of St. Louis and represented himself to be an ar-
chitect.   The Gerardis became acquainted with Gardner
in September, 1906, and he undertook, with their ap-
proval, to acquire the title to the property on Kings-
highway and Maryland avenue above described, with
a view to the erection of a hotel building on it.   The
title was in the Euking Realty Company, subject to a
first deed of trust for $47,500, executed by Thomas P.
Plumridge to B. F. Mathias, as trustee for the Collier
estate, and by a second deed of trust to secure a note
for $2500, executed by L. I. Finegan, to whom Plum-
ridge sold the property; that is to say, the note and
deed of trust in controversy in this case.   Finegan had
conveyed to the Euking Realty Company from whom
Harry B. Gardner acquired the property pursuant to his
arrangement with the Gerardis.   The Euking Realty
Company conveyed to Gardner, October 8, 1906, by a
warranty deed which recited it was subject to the two
prior deeds of trust we have mentioned and that Gard-
ner assumed and agreed to pay them.   Gardner paid
$20,000 in cash on the purchase price of the property
in two installments, of which the last was paid October
8th, and executed a third deed of trust to Henry R.
Weisels, as trustee for the Euking Realty Company for

$45,000, which conveyance recited it was subject to the two prior deeds of trust. Those three incumbrances and the cash payment made up the price, $115,000. By a deed dated October 19th, but acknowledged October 30th, and recorded November 5th, Gardner conveyed the property to the Monarch Realty Company, a corporation which had been formed to take over the title, the stockholders being the Gerardis, Gardner and a man named Beal. This deed to said company recited it was subject to the first two deeds of trust, the second of them being the one the foreclosure of which is sought to be enjoined. On October 23, 1906, Gardner took up the note for $2500 secured by said second deed of trust, which note, as said, was then owned by John S. Carter. Gardner paid Carter for the note by the following check drawn on the Commonwealth Trust Company:

"St. Louis, Oct. 23, 1906.
"COMMONWEALTH TRUST COMPANY,
"Pay to the order of John S. Carter ($2513.34) Twenty five Hundred and Thirteen and 34-100 dollars.
"In payment in full for D. T. on
"Maryland and Kingshighway property.
"(Signed)        H. B. GARDNER."

On September 27, 1906, the Gerardis had turned over to Gardner a certificate of deposit on the National Bank of Commerce, for $18,702.79, to pay on the purchase price of the lot. The Gerardis testified Gardner represented he had paid $20,000 out of money of his own deposited in the Commonwealth Trust Company and they gave him the certificate to reimburse him. Gardner used $5000 of the proceeds of the certificate of deposit to pay on the price of the lot that day and placed the remainder to his credit in the Commonwealth Trust Company, where at the time he had a deposit of $6.47. Later he drew various checks on the account for his own purposes, so that on October 8th, when he paid

the Euking Realty Company $15,000 on the price of the lot, he had on deposit only $11,394.79 of the original fund. This is an important fact; because before making the payment he increased his account by a deposit of $18,000, and out of this deposit he later paid the note in dispute. One question is as to whose money was deposited, his or the Gerardis'; and the significance of this question will develop as the facts are told. It was on September 28th that Gardner entered into a written contract with the Euking Realty Company for the purchase of the property, which contract stated the terms of the purchase and was afterwards carried out on October 8th by the Euking Realty Company executing a deed to Gardner. The original contract of September 28th between Gardner and the Euking Realty Company bound the former to pay the note in dispute as part of the consideration for the sale of the lot to him; the deed was recorded and the contract was not. The Gerardis said the understanding between them and Gardner was the title was to be taken in the name of Joseph Gerardi, Jr., and because it was not, and also for other reasons, a bitter quarrel and litigation ensued finally between the Gerardis and Gardner. Meanwhile, on October 8th, the Garardis turned over to him a cashier's check on the Fourth National Bank of St. Louis for $18,000, in a transaction, the real nature of which is in dispute between them and Gardner. They say this check was delivered to him to pay off a mortgage for $16,500 which he had represented was on the property and had to be paid in order to prevent a foreclosure sale; also to pay him the difference between the prior certificate of deposit, $18,702.79, and the $20,000 he represented he had paid out of his own funds on the price of the lot, and that he returned them by check $500 remaining after those items were settled. Gardner's version about why the cashier's check for $18,000 was turned over to him on October 8th is this: The Monarch Realty & Building Company had been organized

about October 5, 1906, with a capital stock of $600,000, divided into 6000 shares of the par value of $100 each, of which Gardner had subscribed for 2500 shares, Joseph Gerardi for 2500 shares and George E. Beal for 1000 shares. As stated above, Gardner conveyed the lot in question to said corporation, which was organized to receive the title and erect on it a hotel building. Gardner testified the Gerardis became dissatisfied because he and Beal had a majority of the stock of the corporation and to get control agreed to pay him $30,000 for 1500 shares of his stock which were to be transferred to Jos. Gerardi, Jr. There is a discrepancy in the testimony about this matter, Joseph Gerardi testifying he was to get 995 shares of Beal's stock as well as 1500 shares of Gardner's. However that discrepancy is not material in the present controversy. But it is material that Joseph Gerardi, Jr., denied the cashier's check on the Fourth National Bank was given to pay for the shares he bought, whatever their number was. The purpose for which the check was turned over to Gardner is important, for the reason that if this was done to pay for his shares, the proceeds of the check were his own, but if he took it under an agreement to use the proceeds in partly paying for and discharging incumbrances on the lot they were not his own. Gardner and Beal testified said check was delivered to Gardner to pay for 1500 shares of his (Gardner's) stock, leaving the Gerardis indebted on the price in the sum of $12,000. Regarding the check for $500 he gave back to the Gerardis, Gardner testified, in effect, he was allowed a commission on the purchase of the lot and had agreed to divide it with the elder Gerardi; that after deducting a sum paid to another real estate man, the commission amounted to about $1000 and he gave a check for half that sum. There is a mass of testimony in the record relating to this matter and as to how far and in what respects Gardner was the agent of the Gerardis and authorized to represent them in transac-

tions incident to the hotel enterprise. Indeed, the bulk of the very contradictory evidence relates to those matters and is so prolix we cannot summarize it further than is necessary to an understanding of the points raised on the appeal. No small part of the evidence is directed to the question of whether entries in the minute book of meetings of the Monarch Realty Company, which purported to confer certain powers on Gardner, were genuine records of directors' meetings of said company or had been forged at the instigation of Gardner. This evidence had to do in the present case with whether Gardner used his own money to pay the note in question, or the Gerardis', and also with the extent of his agency. If the story of the Gerardis about the cashier's check is true, when Gardner put the proceeds of it to his credit in the Commonwealth Trust Company and drew on it to pay Carter for the note in question, he paid for said note with money of the Gerardis and not with his own money; whereas if his version is true, and he had sold his stock, receiving in part payment said check, when he put the proceeds to his credit and afterwards drew on the account to pay for the note in question, then inasmuch as the proceeds of the check or certificate first furnished him by the Gerardis had been exhausted, he paid with his own money and took over the note for himself and not for the Gerardis. Still further stating the relevancy of the testimony, we remark that though it would not conclusively prove the note in question was purchased by Gardner and not paid if he used his own money in the transaction, that circumstance would favor the theory of a purchase. Gardner, it must be remembered, had accepted a deed from the Euking Realty Company to himself wherein this very note and the deed of trust securing it were recited, and a covenant was inserted whereby Gardner assumed and agreed to pay the note. He had executed a third deed of trust to secure a note for $45,000 made by him, and in the third deed of trust

had recited the two prior ones, including the one in controversy; and, later, on October 19th, he had conveyed the property to the Monarch Realty & Building Company, reciting the first two deeds of trust, including this one, and saying the conveyance was subject to them. Hence it would be less probable that he intended to pay off and discharge the note and deed of trust in controversy if he used his own money in the transaction with Carter, than if he used money furnished by the Gerardis; because if he used his own money to pay the note and discharge the lien of the deed of trust by which it was secured, it is not clear how he expected to reimburse himself. The learned trial judge deemed Gardner's version was supported by the weight of evidence and that he had paid for the note with his own funds. The Rookery Realty, Loan, Investment & Building Company came to be interested in the property in this way: It was organized in December, 1906, by the Gerardis and employees in their hotel and under their control, to acquire the title to the property and acquired the title by a sale under the third deed of trust executed by Gardner to secure the note given by him for $45,000. The trustee in that deed of trust was Henry R. Weisels, who sold under the power conferred in it, December 27, 1906, and James J. McDonald bid it in for the Rookery Company and after getting a deed from the trustee, Weisels, conveyed the title to the Rookery Company. This sale and purchase seem to have been intended to cut out the title of the Monarch Realty Company. The notice of the sale as advertised, stated it would be made subject to the first deed of trust for, $47,500 and the second deed of trust for $2500. This advertisement was read at the sale. McDonald's deed to the Rookery Company warranted the title except as to taxes of 1907 and "except also against all incumbrances now of record on said property." Carter, who sold the note in controversy, and Gardner, who bought it, practically coincide as to the facts of the transac-

tion.   Both say Gardner asked that the note be not
marked paid or cancelled, stating he could not pay it
off until he had procured action by the board of di-
rectors of the corporation for which he was acting.
Carter had been pressing for payment of the note and
Gardner said he would pay it to protect the company
he represented; that he would pay it or take it up with
his own money, but wanted it turned over to him un-
cancelled so he would be secured pending the action
of the board of directors of the company.   Carter
agreed to do this for the accommodation of Gardner,
saying the note was past due and he did not propose to
await the action of the board of directors.   Harry B.
Gardner says he induced his brother, James P. Gardner,
who was a street car conductor in East St. Louis, but
a man of some means, to take over the note for the
amount the former paid for it.   This was done accord-
ing to Harry B. Gardner's testimony, because he was
unable to carry the note.   The court below found he
was the real holder and owner and his brother's appar-
ent interest in the note was colorable.   Subsequently,
on November 12, 1906, as stated, the note was sold by
Gardner to Leonidas S. Mitchell, who, before buying,
made inquiries of the Euking Realty Company and of
Christie, the trustee in the deed of trust, regarding the
circumstances of the issuance of the note and how it
was secured; also of the incumbrances on the property.
The officers of the Euking Realty Company represented
the note to be a valid obligation and secured by a re-
corded deed of trust.   The note is in evidence and shows
no indorsement except one in blank and without re-
course made by the payee Plumridge.   Mitchell was
aware the Gerardis had brought an attachment suit
against Harry B. Gardner, and required both members
of the firm of Gardner Bros. & Company to sign a state-
ment that the note was the property of the firm and
no one else was interested in it; also to guarantee its
payment within one year from the date of purchase.

Mitchell acquired knowledge of the attachment action the Gerardis had filed through his office of treasurer of the Commonwealth Trust Company, which was garnished in the action. Before buying the note he made no inquiries of the Gerardis about it, but learned from another source Gardner had given a third mortgage on the property to secure the note for $45,000 to the Euking Realty Company. The court below found Mitchell purchased the note after maturity and in good faith. In the latter part and about the 20th of October, the Gerardis had the title to the lot examined by an attorney, they having become alarmed and suspicious of Gardner, and it must have been ascertained then the deed of trust to secure this note was still unsatisfied. Plaintiffs prosecuted this appeal from a judgment dissolving the temporary injunction and dismissing the petition.

Though no objection was made to the joinder of the Rookery Company and Jos. Gerardi, Jr., as plaintiffs, or that the petition was multifarious, we deem it well to remark that reasons differing in some particulars might be advanced for the relief of the two plaintiffs. Both would rely on the contract between the Euking Realty Company and Gardner by which the latter bound himself to pay the note and on Mitchell having purchased it after maturity; but Jos. Gerardi, Jr., asserts he contributed part of the money paid by Gardner on the price of the lot and part of the very fund used to take over the note; whereas the Rookery Company had no part in those transactions, and indeed was not organized until later, in December, when it acquired title to the lot with notice of all prior transactions and facts, particularly that the deed of trust to secure the note in controversy remained unreleased on the record in the office of the recorder of deeds. Moreover, the Rookery Company labors under the disadvantage of having acquired title at a sale by a trustee who had advertised the land would be sold subject to the deed of trust in question and who executed to the

Rookery Company a deed which recited the title was conveyed subject to existing incumbrances. It follows the only basis for a decree in favor of the Rookery Company to restrain defendant Christie from selling as trustee is that the debt secured by the deed of trust under which he would sell and the deed itself had been paid and extinguished as against any party interested in the lot, even though the interest was acquired subject to "existing incumbrances." Otherwise stated, its right to relief would depend on proof that the debt in question is not, in any contingency, an existing incumbrance. If Joseph Gerardi, Jr., furnished part of the money used to take up the note, he might argue plausibly that the note and deed of trust ought to be declared discharged in his favor. For reasons which cannot be made clear without a more minute criticism of the evidence than we can allow space for, we remain in doubt about whether money furnished by the Gerardis was used for this purpose or Gardner used his own money, and shall defer to the finding of the court below that the latter hypothesis is the true one—a conclusion which leaves Jos. Gerardi, Jr. with but little more equity in his favor than his co-plaintiff enjoys. On the day when Gardner acquired the note, October 23, 1906, he yet held title to the lot subject to incumbrances, for his deed to the Monarch Realty Company, though dated October 19th, was not acknowledged until October 30th and presumably was not delivered until then. Having agreed in his contract with the Euking Realty Company to pay this note as part of the consideration for the lot, he became primarily responsible for the debt, instead of Finegan, the maker, and Carter or any other holder of the note would have had an action against him upon it; and as the stipulation was for the benefit of the Euking Realty Company, it would have been entitled to redress against him for a failure to pay whereby it was damaged. [Nelson v. Brown, 140 Mo. 580, 41 S. W. 960; Crone v. Stinde, 156 Mo. 262,

56 S. W. 907.] Having acquired the fee of the property in a contract obligating him to pay the note, counsel for plaintiffs insist his transaction with Carter was a payment, regardless of whether or not he and Carter intended it should be; and *a fortiori* because the check given by Gardner to Carter showed that was the intention. The check favors defendant since it purports to have been given in payment "for" not "of" the deed of trust. Said counsel invoke the rule that when the owner of the fee of a parcel of land which is subject to an incumbrance the owner is primarily responsible for, acquires the incumbrance, it is extinguished by merger in the fee and the merger cannot be prevented by having the holder of the secured debt go through the form of transferring it to the owner of the fee. [2 Pomeroy, Eq. Jur. (3 Ed.), sec. 797; 3 Pomeroy, secs. 1206, 1213; 1 Jones, Mortgages (6 Ed.), secs. 864, 865; Crow v. Stinde, supra; Heim v. Vogel, 69 Mo. 529; Kellog v. Schnaake, 56 Mo. 136; Johnson v. Walton, 60 Ia. 315; Birke v. Abbott, 103 Ind. 1; Drury v. Holden, 121 Ill. 137; Hartshorne v. Hartshorne, 2 N. J. Eq. 349; McCabe v. Swope, 96 Mass. 188; Carleton v. Jackson, 121 Mass. 592.] Equity follows this rule of the common law, as it prevents owners from using incumbrances they have discharged to screen titles from adverse claims, say for dower, other liens, or debts at large. And it is properly applicable to the case of a grantee who assumes and agrees to pay an incumbrance created by his grantor and subsequently buys in the incumbrance. The circumstances of the litigation at bar should be critically examined to see if it falls within the reason of the rule; and when we pierce to the heart of the case we perceive Gardner was only technically the owner of the fee when he obtained the note from Carter. In truth he was hardly that, for the fee was secondarily in Christie as trustee in the deed of trust in dispute, primarily in Mathias, trustee in the first or Collier deed of trust, and next in Weisels, trustee in the third deed of trust

held by the Euking Realty Company. These are material facts, particularly the outstanding fee in Christie, touching the question of whether the Carter deed of trust could merge in Gardner merely in consequence of his acquiring the note; for it seems an outstanding title in a trustee will prevent a merger of the deed of trust in the fee when the holder of the latter buys the secured debt, for he acquires no interest as regards the land, except to have it sold by the trustee in the event of a default; that is, does not acquire an estate which will merge in the larger estate he holds already, but only a right. [Hospes v. Almstedt, 13 Mo. App. 270, 273; Curry v. Lafon, 133 Mo. 163, 179, 113 S. W. 246; Jones, Mortgages (6 Ed.), sec. 848, p. 984.] We merely allude to this doctrine without in the least resting our decision on it, being concerned with the fact that Gardner, if he held the legal title, did not hold it beneficially, or, at least only partly so. He held in trust for himself and associates and the corporation they meant to form. He was not to pay for the lot out of his own funds, but with money furnished by the Gerardis or to be raised on bonds issued by the corporation and secured by a deed of trust on the property. Therefore, though as against other parties in interest he was bound by his contract with the Euking Realty Company to discharge the note, he was not bound to do this as against the Gerardis, much less as against the Rookery Company. Gardner had an interest in the lot which warranted him to acquire the note, if that was necessary to prevent a sale under the deed of trust, and if he did this by purchase, as he and Carter testified, and as the court below found, he was not a volunteer in the transaction. It is true he stood in a fiduciary capacity to the Gerardis and Beal, or to the then formed Monarch Realty Company, and could not lawfully hold or dispose of the note to the prejudice of said company, or so as to deprive it of the right to pay it and discharge the lien. It does not appear he was acting in the particular transaction ad-

versely to his associates, if, as the court found, he used his own means to buy the note. On the contrary the fair view is that he was protecting his own and their interest in the lot from a foreclosure sale. There are no equitable defenses on the part of the Gerardis or the Monarch Realty Company against this note in the hands of Mitchell. If they would have defenses as against Gardner on the score that he acquired it contrary to his trust, or other defenses growing out of their relation with him (except the rejected theory of his having paid it with their money) these defenses were collateral, unconnected with the note and not available even against a purchaser in good faith after maturity. [Cutler v. Cook, 77 Mo. 388; Barnes v. McMullins, 78 Mo. 260; Knaus v. Givens, 110 Mo. 58, 19 S. W. 535; Kelly v. Staed, 136 Mo. 430, 37 S. W. 1110; Gardner v. Beacon Trust Co. (Mass.), 2 L. R. A. (n. s.) 767.] In other words Gardner might purchase the note and collect it out of the property if it was not paid by his associates or their corporation, unless they or it had some collateral demand or counterclaim against him which would prevent. In any event it was not paid if he bought with his own money without intending to pay it and, therefore he might sell to Mitchell as Carter might have done. If the doctrine of merger has anything to do with the case, then considering the circumstances and the position of these plaintiffs, the rule connected with that doctrine which may justly be adopted is not the one counsel for plaintiffs cite, that a merger necessarily ensues when the owner of the fee who is primarily responsible for the payment of a mortgage or other lien on land acquires the incumbrance; but the rule of equity that when the owner of the fee acquires title to an outstanding incumbrance on the property, say a mortgage, for which he is not individually responsible, no merger of the incumbrance in the fee will be permitted if the intention of the owner when he acquired the incumbrance was that there should be

none, but instead the incumbrance should be kept alive for his benefit. [2 Pomeroy, secs. 790, 791; Jones, Mortgages, sec. 848; Chrisman v. Linderman, 202 Mo. 605, 100 S. W. 1090; Collins v. Stocking, 98 Mo. 290, 11 S. W. 750; Atkinson v. Augert, 56 Mo. 515; Sater v. Hunt, 66 Mo. App. 527.] We concede that if Gardner had been in truth the owner of the fee for his own benefit and held in no trust capacity and had personally assumed the note, then not only those with whom and for whose benefit he stipulated to pay the note in question, but all other persons then or thereafter interested in the property, would have been entitled to have the transaction with Carter treated as an absolute extinguishment of the debt; unless, perchance, Mitchell might have been heard to defend on the ground the Gerardis had enabled Gardner as their agent, to mislead him about the note, a question we will not go into. Aside from a possible defense on that ground, the note or lien would have been discharged. [Kellog v. Schnaake, Heim v. Vogel, supra; Murphy v. Simpson, 42 Mo. App. 654.] But as regards these plaintiffs, Gardner was in no just sense obligated primarily, or at all, to pay the note in controversy and was in no real sense the owner of the fee. In the essence of the case plaintiffs are endeavoring to take advantage of Gardner's having charged himself with a primary obligation in favor of the maker of the note, the holder Carter and the Euking Realty Company. According to the finding below Gardner not only acquired the note with his own funds and for the protection of his own interest and the interests of the Gerardis, but cherished the intention at the time, as was clearly established by his and Carter's testimony, not to pay the note and discharge the deed of trust, but to keep both alive and get them out of the hands of Carter, who was pressing for payment, and into the hands of a holder who would wait until money was raised by the pre-arranged plan of himself and associates, to take care of incumbrances. Under this

view of the case the question of merger becomes a secondary one, for when we get to the bottom facts they are that the note was not paid by Gardner, but bought, and he had a right to buy it as against the plaintiffs. The obvious result is the title to it passed from him, or from Gardner Bros. & Company, to Mitchell. Carter, who might have insisted on payment by Gardner, waived his right, according to his own testimony, and consented to a sale. The Euking Realty Company which also might have insisted on Gardner's obligation to pay, and perhaps on treating the transfer to him as payment, did not do so; for said company represented to Mitchell the note was yet a valid charge on the property. We find nothing in the conduct of Mitchell to indicate he acted in bad faith. Mitchell appears to have inquired of every possible source of information about the validity of the note before buying it; and, indeed, on the finding below there was nothing to invalidate it.

The judgment is affirmed. All concur.