Rex P. STEVENSON, Respondent,

v.

Lester E. STEVENSON and Lucy Stevenson, Appellants.

No. WD 32171.

Missouri Court of Appeals,
Western District.

June 23, 1981.

Thomas O. Pickett, Pickett & Raynes, Trenton, for appellants.

Jack Peace, Stockard, Andereck, Hauck, Sharp & Evans, Trenton, for respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

This is an appeal on behalf of defendants Lester E. and Lucy Stevenson from a circuit court judgment in favor of the plaintiff in the sum of $3,000.00 with interest in the amount of $669.86 and attorney fees of $300.00 on a promissory note. We reverse.

Rex P. Stevenson filed suit on June 19, 1979, in Grundy County against Lester E. and Lucy Stevenson, his brother and sister-in-law, alleging that he was the assignee of a promissory note in the amount of $6,000.00 plus interest at 10% per annum executed by the defendants to the Trenton Trust Company of Trenton, Missouri, on March 31, 1978. Because interest had not been paid when due, Rex prayed for the accelerated principal and interest and the reasonable attorney fees provided for in the note. In their answer Lester and Lucy alleged that Rex was not a holder in due course of the promissory note because of his alleged knowledge of the lack of consideration for the execution of the note. Trial was held on June 24, 1980. Applying the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976), we must reverse the judgment of a trial court when it erroneously declares or applies the law.

In March, 1978, defendant Lester Stevenson accompanied his father, Garland Stevenson, to the Trenton Trust Company, where the latter negotiated a $6,000.00 loan. Although the bank officer who approved the loan testified that he believed that part of the money was to be used by Lester in his insulation business, Lester asserted that he did not accompany his father for the purpose of negotiating a loan for his own benefit. On March 31, 1978, Lester, his wife Lucy, and Garland went to the Trenton Abstract Company office where a promissory note for $6,000.00 and a deed of trust securing the note with a 30-acre farm were prepared. The deed of trust, reflecting that Garland, Lester and Lucy had executed the note, was recorded on April 3, 1978. The note indicated that the purpose of the loan was for an insulation machine.

As soon as the note and deed were executed, the $6,000.00 was deposited in Garland's bank account. On the same day, Lester, who had the authority to do so, drew a check for $3,000.00 on that account and deposited the money in his own checking account. Lester testified that his father gave him this sum for the purpose of buying insulation equipment. It is undisputed that no payments were made on the note.

After Garland's death on December 12, 1978, plaintiff Rex Stevenson discussed with his three siblings the possibility of purchasing their interests in the farm. His

sister informed him that the land was encumbered by the debt, but when Rex inquired as to whose note it was, Lester told him that it was their father's note. He did not mention, however, that he also had signed it. Lester told Rex that he did not know what happened to the loan proceeds and speculated to another brother, Jerry, that their father may have given the money to a church.

On April 2, 1979, at a meeting in the abstractor's office, the defendants asked Rex if he would "take care of the note" as a part of the conveyance. Rex agreed to do so. Although the market value of the farm was around $15,000.00, Rex's brothers and sister agreed to sell it to him for $14,000.00, each of the children to receive $3,500.00. Of this amount, Rex paid each $2,000.00 in cash and retained $1,500.00 from each, which together with his own $1,500.00, created a fund to pay off the note. Rex testified that on the same day he paid the bank $601.88 in overdue interest without actually seeing the note. On April 20, 1979, Rex conveyed an undivided one-half interest in the farm to his brother Jerry.

According to his testimony, Rex first learned that the note was signed by Lester and Lucy as well as his father on April 27, 1979, when he paid the note at the bank. He issued a check to the bank for the full amount of the note. Rather than having the note cancelled, he caused it to be assigned to him, "on advice of counsel", he said.

Trial without a jury was held on June 24, 1980. On June 26, the court entered its judgment. Defendants' motion for a new trial was overruled.

Lester and Lucy contend that the judgment of the trial court was in error for two reasons: (1) the promissory note and deed merged when Rex assumed payment of the note, thereby extinguishing Rex's cause of action; and (2) since Rex was not a bona fide purchaser of the note because he had notice by the recorded deed of trust, the note was subject to defendants' affirmative defense of lack of consideration.

■ Rex argues initially that because the issue of merger was not raised in the appellants' motion for new trial that point has not been preserved for review and should be dismissed. Rex's position is incorrect. In a court-tried case a motion for new trial is not necessary "to preserve any matter for appellate review", Rule 73.01(b), and "if a motion for new trial is filed the fact that it may be imperfect does not prejudice the appellant's position on appeal." *Don L. Tullis & Associates, Inc. v. Gover*, 577 S.W.2d 891 (Mo.App.1979).

■ All of the parties agree that before his purchase Rex was aware of the existence of the $6,000.00 note secured by the farm. The parties agree that Rex agreed to assume payment of the note by reducing the $3,500.00 share owed each of the tenants in common to $2,000.00 and retaining $1,500.00 from each to pay the encumbrance. Rex's answers to questions by defendants' counsel demonstrate his intention to assume the note:

Q. Now, isn't it a fact that when you were at Elizabeth Linker's office there you were talking about buying this farm, Lester and his wife signed your deed to correct this thing and you were discussing the farm there and they asked you specifically: "Now, you are going to take care of the note, isn't that right?"

A. That's exactly right. They asked me if I would take care of the note and I said yes.

Q. And this was figured on the basis of $14,000.00 to you—

A. That's right.

Q. You are paying $14,000, excuse me, each child lumping off $1500 apiece, is that right? So that you would assume the note and pay them actually out of pocket $2,000.00 apiece?

A. Yes.

Missouri's Supreme Court in *McFarland v. Melson*, 323 Mo. 977, 20 S.W.2d 63 (1929) delineated at 66 and 67 Missouri's position regarding conveyances subject to an encum-

brance and a conveyance whereby the grantee assumes liability for the encumbrance.

The law is settled in Missouri and generally over the country that, when a grantee takes title to land by deed reciting the conveyance is subject to certain incumbrances, the deed itself imposes on him no personal liability with respect thereto. . . .

But, while this is so, the weight of authority in this and most other states holds that, as against an unequivocal recital of the above nature in a deed, the fact may nevertheless be established by *parol* testimony that the grantee assumed and agreed to pay the incumbrance—a wholly different thing . . . .

. . . .

But it is true the evidence to establish the contract must be clear and convincing; and that it must be made to appear the parties agreed—that there was a meeting of minds—on the proposition that the grantee should make the mortgage debt his own, or else the circumstances proven must be such as to estop the grantee from denying the liability, in which case the law implies a promise on his part.

. . . .

If the real intention and agreement of the parties is that the full value of the unincumbered interest shall be the purchase price paid and the amount of the incumbrance is allowed as a credit, then the purchase money represented thereby really belongs to the grantor, and the grantee becomes personally liable, the law implying his promise to pay because the transaction in effect leaves in his hands a fund for that purpose . . . . (Citations omitted.)

The record presents clear and convincing evidence that Rex agreed to assume the mortgage and that it was the intention of all the parties that he should do so.

■ As noted in *Gerardi v. Christie*, 148 Mo.App. 75, 92, 127 S.W. 635, 639 (Mo.

App.1910), Missouri courts follow the rule that

. . . when the owner of the fee of a parcel of land, which is subject to an incumbrance the owner is primarily responsible for, acquires the incumbrance, it is extinguished by merger in the fee, and the merger cannot be prevented by having the holder of the secured debt go through the form of transferring it to the owner of the fee. 2 Pomeroy, Eq. Jur. (3d Ed.) § 797; 3 Pomeroy, §§ 1206, 1213; 1 Jones Mortgages (6th Ed.) §§ 864, 865; *Crone v. Stinde* [156 Mo. 262, 55 S.W. 863, 56 S.W. 907,] supra; *Heim v. Vogel*, 69 Mo. 529; *Kellogg v. Schnaake*, 56 Mo. 136; *Johnson v. Walter*, 60 Iowa, 315, 14 N.W. 325; *Birke v. Abbott*, 103 Ind. 1, 1 N.E. 485, 53 Am.Rep. 474; *Drury v. Holden*, 121 Ill. [130,] 137, 13 N.E. 547; *Hartshorne v. Hartshorne*, 2 N.J.Eq. 349; *McCabe v. Swop* [Swap], 96 Mass. 188; *Carlton v. Jackson*, 121 Mass. 592. Equity follows this rule of the common law, as it prevents owners from using incumbrances they have discharged to screen titles from adverse claims, say, for dower, other liens, or debts at large. And *it is properly applicable to the case of a grantee who assumes and agrees to pay an incumbrance created by his grantor, and subsequently buys in the incumbrance.* (Emphasis added.)

Therefore, we hold that the promissory note, secured by the farm, was merged in the fee and Rex has no cause of action on the note.

■ In the trial court and again on appeal the defendants asserted that the plaintiff knew or had constructive notice that the defendants had signed the note. Plaintiff responded that the misrepresentations Lester made offset the defense of constructive notice. We find that any misrepresentations that Lester may have made to Rex concerning his liability on the note did not harm Rex. Although Rex does not base this action in tort, the holding of *Jurcich v. General Motors Corp.*, 539 S.W.2d

595 (Mo.App.1976), at 600 and 601 would apply to such a claim:

> One of the essential elements of a cause of action based on fraud or deceit is that the plaintiff suffer injury which is a consequence of and proximately caused by the misrepresentations made to him and upon which he relied. *Ackmann v. Keeney-Toelle Real Estate Company*, 401 S.W.2d 483, 488[4] (Mo. banc 1966). A cause of action for deceit is one which protects the formulation of business judgment without being misled by others. Harper & James, The Law of Torts, Vol. 1, Ch. VII, Misrepresentation and Nondisclosure, Sec. 7.1, p. 527. Not all misrepresentations are the subject of a cause of action sounding in fraud. "In contradistinction with trespass and other direct injuries for which the complainant is awarded nominal damages if he should fail to plead and prove actual damage, deceit belongs to that class of tort of which pecuniary loss constitutes a part of the cause of action." *Lammers v. Gruelich*, 262 S.W.2d 861, 864[3] (Mo.1953), *Toenjes v. L. J. McNeary Construction Company*, 406 S.W.2d 101, 106 (Mo.App. 1966).

Rex had actual notice that there was an encumbrance of $6,000.00 against the property. He agrees that the property is worth at least $15,000.00. In all, he paid $8,000.00 in cash to the grantees of the farm, $669.86 in interest and $6,000.00 from the "fund" created by the reduction in the sale price by each grantee. We do not see that Rex was harmed by paying $14,669.86 for property he believes to have a value of $15,000.00. Neither do we find that Rex's bargain with his co-tenants was induced by fraud.

In view of the foregoing we find a discussion of the appellants' second point to be unnecessary.

Accordingly, the judgment is reversed.

All concur.