### KERR v. HENDERSON et al.   (No. 7889.)

Court of Civil Appeals of Texas. San Antonio.
Jan. 18, 1928.

**1. Mortgages ⊜≈275 — Purchaser, assuming payment of mortgages, cannot subsequently purchase at sale under first mortgage and claim title as against second mortgagee.**

The purchaser of property which is subject to two mortgages, who assumes the payment of such mortgages as part of the purchase price, cannot buy such property at a sale under the prior mortgage, and, because of such purchase, claim title as against the second mortgagee.

**2. Mortgages ⊜≈275—Equity will decree enforcement of second lien which, by fraudulent sale, has been cut off and title taken by another for mortgagor.**

Equity will decree the enforcement of a second lien which, by connivance or fraud between the first mortgagee and the mortgagor, has been cut off by sale under the first mortgage and title has been taken by another for the mortgagor's benefit.

**3. Mortgages ⊜≈480—Whether foreclosure of first mortgage and conveyance to mortgagor's brother was fraudulent scheme to cut off second mortgagee's rights held for jury.**

Where, after sale under a first mortgage and subsequent purchase of the property by the brother of the original mortgagor, a second mortgagee brought suit to foreclose his lien, though the first foreclosure was against both the mortgagor and the second mortgagee, *held,* that whether foreclosure of the first mortgage and subsequent conveyance of the property to the mortgagor's brother was a fraudulent scheme to cut off the second mortgagee's rights for the mortgagor's benefit was for the jury.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Suit by O. W. Kerr against Smith Henderson and another. From the judgment, plaintiff appeals. Reversed and remanded for new trial.

Patterson & Galbraith, of Brownsville, for appellant.

West & Hightower, of Brownsville, and Spears & Montgomery and C. C. Bowie, all of San Benito, for appellees.

SMITH, J.   The suit was for foreclosure of a junior vendor's lien against a tract of land in Cameron county, the prior lien having been, previously foreclosed against all parties at interest, including the junior lienholder.

The first lien notes were owned by A. Pitt, and the second by O. W. Kerr. In September, 1922, Pitt brought suit for debt and foreclos-

ure against the maker of the first lien notes and to foreclose against and conclude Kerr as the holder of the second lien notes. Kerr, cited by publication, defaulted, and was represented by an attorney appointed by the court, as required by statute. Pitt recovered personal judgment against Smith Henderson, as the maker of the first lien notes, and for foreclosure against both Henderson and Kerr. Kerr was thereby precluded from asserting his second lien upon the land, unless the right to do so survived by reason of facts now to be set forth.

Henderson, the maker of the first lien notes, and owner of the legal title to the land, became insolvent some months before the first lien was foreclosed, and abandoning the land removed to the Republic of Mexico, where he obtained somewhat lucrative employment. He conceived the idea of getting the land back, and took the matter up with Pitt, the holder of the notes he had executed. Pitt himself had had reverses, and proposed to Henderson that, if the latter would reimburse him (Pitt), he would get the land back for Henderson, freed of the second lien. This was satisfactory to Henderson, who began making remittances to Pitt with that plan in view. He first sent $500, but Pitt advised him that this sum was not sufficient to secure the bargain, and that he would hold it, and, if Henderson was not able to send more, he would return the payment to Henderson and keep the land. The latter then sent $300 more, but Pitt advised him that the amount was still inadequate. Shortly afterwards Pitt foreclosed his lien, and bought in the land. At about this time he received another remittance of $500 from Henderson, and then wrote him as follows, omitting formal parts:

"I called on my attorneys to-day relative to making a conveyance to you of the 32.12 acres of land which I purchased at sheriff's sale, and which you farmed last year.

"My attorneys informed me that while the title I have is perfect in every respect, owing to the fact that you have executed some second vendor's lien notes, which are held by the Ogden outfit, if the title should become vested in you now they might institute suit on these second lien notes and get a judgment against you, levy an execution on the property and get same, subject to any lien notes which you might execute in my favor.

"If you were a married man, or a man of family, and lived on the place, it would be your homestead and you could not be dispossessed, but, as the matter now stands, so my attorneys inform me, the property should not be deeded direct to you. It would be all right to deed to some one in whom you have confidence and who is not in debt to anybody. In order to keep the matter straight, this letter is to acknowledge the receipt from you of $1,300 in cash, and the agreement on my part to execute and deliver to you, or to any person named by you, a general warranty deed conveying said property upon payment to me of the further sum of $2,-

125, either in cash or notes. If in notes, to be not more than five, due at intervals of six months, the first to be for $625 and the remaining three for $500 each, all to bear interest at 8 per cent. from date, payable to my order at Brownsville, Tex., same to be secured by a deed of trust.

"However, I am writing you this letter in order that you may have written evidence of the payment to me of the sum of $1,300, and of my willingness to comply with my agreement with you.

"You understand the proceeds of the farm are to go to you, and I have no desire not to deed the land to you at this time, but feel sure my attorneys have advised me correctly, and to do so might result in your losing the place. You will understand after the notes executed by you, payable to Ogden & Co., have been past due for four years, same will not be collectible by law.

"As the matter now stands title to the property will still be vested in me and I am carefully holding same for you. However, should you desire to have it in some one's else name, let me know and I will execute the deed at once."

Acting on the offer contained in this letter Henderson closed the deal and directed Pitt to convey the land to Henderson's brother, Homer Henderson, who was to take the title and hold it for Smith Henderson. This was done on January 8, 1924. In June, 1924, Smith Henderson returned from Mexico, paid off the balance due Pitt on the purchase, and began farming the land, title to which was held for his benefit by Homer Henderson. On November 15, 1926, O. W. Kerr, holder of the second lien notes, brought this suit against the Hendersons, and prayed for personal judgment against Smith Henderson, and for foreclosure of the lien against all defendants. Upon the trial the court directed a verdict in favor of Kerr for personal judgment against Smith Henderson, the maker of the second lien notes, but against Kerr upon his prayer for foreclosure of the lien. Kerr has appealed from the decree denying his prayer for foreclosure.

Appellant, Kerr, contends that the evidence showed "a redemption by Smith Henderson from the foreclosure proceedings and the sale thereunder" in the original suit; or, in the alternative, that the sheriff's deed to Pitt was "merely a mortgage"; that the evidence raised jury issues upon those two contentions; and that the court erred in directing a verdict thereon.

Let it be said again that Smith Henderson was the owner of the legal title to the land subject to the first lien, which was held by Pitt to secure a debt assumed by Henderson; and subject also to the second lien, which was held by Kerr to secure notes executed by Henderson to his vendor. Henderson was therefore primarily liable, in person, for both debts, and both debts were secured by valid liens upon the land.

[1, 2] In the case stated nothing but the payment of the debts in full could operate to discharge the lien so as to directly give Henderson title to the land freed of the incumbrances. And so, if he had been the purchaser at the sale resulting from the foreclosure of the first lien, he would have taken title only as against the holder of that lien; he would not have taken title as against the junior lien, even though the holder of that lien had been a party to the foreclosure proceedings and had been thereby precluded as to all others. For, having been liable to pay the incumbrance on account of which the sale was made, he could build up no additional title on his own default, and his purchase at such sale would operate only as payment of that particular incumbrance. He had taken his legal title subject to both debts, agreeing to pay off both in consideration of the conveyance to him, and he would not be permitted to so deal with the first as to cut off and destroy the lien of the second, without paying it off, for this would be in derogation of his agreement and of the duty he had deliberately assumed. So, if the incumbered premises had been purchased directly by him upon foreclosure of the first lien, and he had taken the title conveyed in pursuance and by virtue of that sale, he would have been estopped to set it up against the second, or Kerr's lien, in violation of that obligation and duty. Beitel v. Dobbin (Tex. Civ. App.) 44 S. W. 299; Conner v. Howe, 35 Minn. 518, 29 N. W. 314; Allison v. Armstrong, 28 Minn. 276, 9 N. W. 806, 41 Am. Rep. 281; Birke v. Abbott, 103 Ind. 1, 1 N. E. 485, 53 Am. Rep. 474. It follows, as a matter of course, that Henderson could not do indirectly what the foregoing rule forbade him to do directly; since he could not cut off and destroy the second lien by himself purchasing at the sale under foreclosure of the first lien, he could not effectuate that result by procuring another to do so for him.

It is conceded that Pitt foreclosed the lien held by him and bought in the land at the foreclosure sale; that in consideration of Henderson reimbursing him for all the moneys he had paid out in the transaction he reconveyed the land to Henderson's nominee for the sole benefit of Henderson, who thereby became the actual owner of the property, took possession of it, and is now enjoying all the benefits of ownership of and dominion over it. So, under the rules stated, if this was done in pursuance of a previous understanding between Pitt and Henderson, with the fraudulent design of cutting off and destroying the second lien, and restoring the property to Henderson without payment of his debt which was secured by that lien, the courts will interfere to defeat that design, and will decree an enforcement of the lien, without regard to the previous foreclosure.

[3] The question of whether Pitt's foreclosure, purchase, and reconveyance of the property to Henderson was done in good faith, or

whether it was done in pursuance of a scheme, previously agreed upon between Pitt and Henderson, to cut off and destroy appellant's lien upon the property, and thereby enable Henderson to evade his obligation and duty to Kerr, the holder of that lien, and by such evasion and default strengthen his title, is purely a question of fact, to be determined by the jury from all the facts and circumstances in evidence. It was therefore error on the part of the trial court to direct a finding upon that issue.

The judgment is accordingly reversed, and the cause remanded for another trial.