### KERR v. HENDERSON et al.   (No. 8076.)

Court of Civil Appeals of Texas.   San Antonio. Dec. 12, 1928.

Rehearing Denied Feb. 6, 1929.

H. B. Galbraith, of Brownsville, and Thos. G. Patteson, of Cooper, for appellant.

Spears & Montgomery, of San Benito, and West & Hightower, of Brownsville, for appellees.

SMITH, J. This is the second appeal in this cause. (Tex. Civ. App.) 1 S.W.(2d) 1100.

The Fresnos Land & Irrigation Company sold the land involved to the Ogden Land Company, taking the latter's notes, secured by the vendor's lien, as part consideration. Subsequently the Ogden Company sold the land to Smith Henderson, who assumed the outstanding notes and executed his own obligations, secured by the vendor's lien, as additional consideration. The Fresno Company sold the first lien notes to A. Pitt, and the Ogden Company sold the second lien notes to O. W. Kerr. Subsequently Pitt obtained judgment of foreclosure upon his first lien notes, against all parties at interest, including Kerr, the holder of the second lien notes. At the ensuing foreclosure sale Pitt bought in the land for an amount equal to the notes he held. In this way Kerr, the junior lienholder, was cut off. Subsequently Pitt conveyed the land to Homer Henderson, in trust for Smith Henderson, the real purchaser. Afterwards this suit was brought by Kerr, the excluded second lienholder, against the Hendersons to recover the amount of the notes he held, and to establish his lien upon the land.

██ Upon the former appeal a judgment denying foreclosure of Kerr's second lien was reversed, upon the ground that the jury should have been permitted to pass upon Kerr's contention that Henderson and Pitt, the holder of the first lien, had colluded to cut Kerr off from his second lien. This question was submitted to the jury upon the second trial, and was resolved against Kerr, who has appealed. The opinion in the first appeal is referred to for a full statement of the case.

The controlling contention of appellant is that collusion is shown, as a matter of law, and, as we feel obliged to sustain that contention, it is deemed proper to set out the testimony somewhat fully.

Appellee purchased the land in January, 1920. He farmed it until the summer of 1922, but, finding it unprofitable, sought other work, and was employed by Pitt in the latter's nurseries. There he and Pitt became apparently quite friendly, and, when the latter said that he wanted to secure other lands in that county, appellee suggested that he was not going to be able to keep and finish paying for the land in controversy, and advised Pitt to get hold of that land. Pitt took the matter up with the holder of the first lien notes, consulted an attorney to determine if he could secure title through foreclosure of the first lien as against the second lien, and was assured he could do so. About that time Henderson left the county and secured employment in the oil fields near Tampico, Mexico. In doing this he gave up his farm, turning it over to Pitt, who took possession

and rented it out to a third person for the ensuing crop season. About this time, July 18, 1922, Pitt purchased the first lien notes. Shortly afterwards Henderson and Pitt entered into a correspondence, by which it was soon tentatively agreed that the former would reimburse the latter for his outlay in the purchase of the notes, and Pitt would foreclose the first lien, buy in the land, and then reconvey it to Henderson. About this time (September 13, 1922) Pitt entered suit to foreclose his lien. On October 25, 1922, Pitt received the first remittance, of $500, from Henderson in the matter. On November 15 Pitt recovered judgment on his notes, and for foreclosure of his lien against all persons interested, including Kerr, the holder of the junior lien, who was cited by publication as a nonresident. On December 23 Pitt received a second remittance, of $300, from Henderson, and on January 3 the land was sold to Pitt under execution for the amount of Pitt's claim, with costs. On February 22 Pitt received a third remittance, of $500, from Henderson. The record is silent as to what, if anything, transpired in the matter, up to July 31, 1923, when Pitt wrote Henderson as follows:

"Brownsville, Texas, July 31, 1923.

"Mr. Smith Henderson, Care J. F. Martin & Company, Apartado 174, Tampico, Tamps., Mexico—Friend Smith: I called on my attorneys to-day relative to making a conveyance to you of the 32.12 acres of land which I purchased at Sheriff's sale, and which you farmed last year.

"My attorneys informed me that while the title I have is perfect in every respect, owing to the fact that you have executed some second vendor's lien notes which are held by the Ogden outfit, if the title should become vested in you now they might institute suit on these second lien notes and get a judgment against you, levy an execution on the property and get same, subject to any lien notes which you might execute in my favor.

"If you were a married man, or man of family, and lived on the place, it would then be your homestead and you could not be dispossessed, but, as the matter now stands, so my attorneys inform me, the property should not be deeded direct to you. It would be all right to deed to some one in whom you have confidence and who is not in debt to anybody. In order to keep the matter straight this letter is to acknowledge the receipt from you of $1,300.00 in cash, and the agreement on my part to execute and deliver to you, or to any person named by you, a general warranty deed conveying said property upon payment to me of the further sum of $2,125.00, either in cash or notes. If in notes, to be not more than five, due at intervals of six months, the first to be for $625.00 and the remaining three for $500.00 each, all to bear interest at 8% from date,

payable to my order at Brownsville, Texas, same to be secured by a deed of trust.

"However, I am writing you this letter in order that you may have written evidence of the payment to me of the sum of $1,300.00, and of my willingness to comply with my agreement with you.

"You understand the proceeds of the farm are to go to you, and I have no desire not to deed the land to you at this time, but feel sure my attorneys have advised me correctly, and to do so might result in your losing the place. You will understand after the notes executed by you, payable to Ogden & Company, have been past due for four years, same will not be collectible by law.

"As the matter now stands title to the property will still be vested in me and I am carefully holding same for you. However, should you desire to have it in some one else's name, let me know and I will execute the deed at once.

"Very truly yours."

Henderson testified that "I got this letter telling me if he deeded the land direct to me the second lien notes could cause me trouble, and so I had him put it in my brother's name".

The letter of July 31 was followed by another remittance of $500 from Henderson, which Pitt received on August 13. About that time Pitt collected $500 rent from the place, and credited it to Henderson, and received another remittance, of $600, from the latter. On January 8, 1924, Pitt conveyed the land to Homer Henderson in trust for the latter's brother, Smith Henderson; the consideration being the entire amount Pitt had expended in the transaction, which was paid by Smith Henderson. In the meantime Smith Henderson had resumed possession of the land, and proceeded to place a $5,000 home and other improvements on it. On April 8, 1926, Kerr, holder of the junior lien upon the land, wrote the following letter to Smith Henderson and the latter's sister, who had together purchased the land from the Ogden Company:

"3106 E. 60th Street, Seattle, Wash. April 8, 1926.

"Mr. Smith Henderson and Mrs. Pearl Austin, San Benito, Texas—Dear Sir & Madam: I have written you several letters regarding the vendor lien notes which I hold. I find no reply.

"I called on you regarding this matter a short time after I purchased the notes. It seemed to me at that time that you were making an effort and would probably work out of it.

"I find this notation in my file:—'Brother and Sister. They are living on the land. Called on them in April, 1922. Mrs. Austin wants to quit. Henderson seems to be a fine fellow. The young man comes from Walla Walla.'

"The last letter I wrote was sent by reg-

istered mail to San Benito, and I am not at all sure that you received it. I want to get these notes adjusted in some way. If I can't it will be necessary for me to put them in judgment to avoid their being outlawed. I will meet you on any reasonable basis by way of compromise, if you want to try to adjust them before I go to any further costs on them.

"Write me at this address."

On receipt of this letter Smith Henderson took it to his attorney, Mr. H. L. Faulk, and, after a conference between the two the attorney, in Henderson's presence and hearing, and, of course, with his approval, and presumably upon information furnished by him, wrote Kerr as follows:

"H. L. Faulk,      M. R. Hall,
    "County Attorney      Assistant
    "Office of County Attorney.

      "Brownsville, Texas, May 1, 1926.

"Mr. O. W. Kerr, 3106 E. 6th Street, Seattle, Washington—Dear Mr. Kerr: Your letter of April 8th addressed to Smith Henderson of San Benito has been handed to me for attention and reply.

"In January, 1920, Smith Henderson and Pearl Austin, his sister, contracted with the Delta Farms Company to purchase 33 acres described as Block 142 and 143, Fresnos Tract in Cameron County, Texas. This land was conveyed to them by the Ogden Land Company whereby they assumed the payment of seven notes held by the Fresnos Land Company which were first lien notes and further executed nine notes as follows:

"Notes 1, 21, 3, payable to the Ogden Land Co.

"Notes 4, 5, 6, 7, 8, 9 payable to the Texas Delta Farms Company.

"These notes being second lien notes.

"Thereafter, Mrs. Austin quit the job and Smith Henderson held on for about two years and then left for Tampico, Mexico.

"Arthur Pitt bought these first lien notes from the Fresnos Company, and then foreclosed on them and purchased the title to the land. Smith Henderson held the land for some three years and farmed it, and has now sold it to some man who I understand lives in Kansas.

"I handled the foreclosure proceedings, and I recall having made the deal with the man from Kansas. Mr. Henderson is now back in this country and is renting the land, but he is wholly insolvent, so far as I know.

"I am letting you know this in order that you may be informed as to the situation relative to this case.

    "Yours truly,      Harry L. Faulk."

It is apparent from the testimony of Henderson and Pitt themselves that the letter bought in the land for the purpose of reconveying it to the former, that this was done with the intention of cutting off the lien held by Kerr, which Henderson was obligated to discharge in order to complete his title. This design was carried out, Pitt conveyed the land to Henderson's nominee, his brother, who took the title and held it for appellee. We conclude, upon the authorities cited in the opinion on the former appeal, that under these undisputed facts appellant was entitled to judgment against appellee, not only for the debt, but to have his lien established and enforced against the land to secure payment of that debt. Accordingly the judgment will be reversed and so rendered.